The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nine, give their attention, for the court is now sitting. God save the United States and this Honorable Court. Please be seated. Thank you for being with us today. We have argument today in four cases. Our tentative plan, at least, is that we will take a short break after the second case and then return. And we will hear argument first in Jonathan R. v. Morrisey and Ms. Wellickson Whenever you're ready. Thank you. Good morning, Your Honors. My name is Laura Wellickson, and I represent a certified class of over 6,000 West Virginia foster children, who, as the District Court acknowledged, suffer the same shocking neglect by the State that its foster care system was designed to redress. This appeal is about the power of federal courts to address unconstitutional conditions so pervasive that only system-wide relief can correct them. The District Court's decision that federal courts lack that authority must be reversed for three reasons. First, the decision squarely conflicts with well-established precedent confirming federal courts have the authority to order system-wide relief. Second, the District Court misapplied threshold standing for redressability, which is easily satisfied here. Third, the District Court prematurely resolved concerns about the scope of the remedy before liability was established. Well, let me ask this. Can federal courts, if an injunction is issued, direct the State to expend funds necessary to effect its injunctive directive? Now, the spending of State funds for prospective compliance is absolutely permissible under the Constitution, Your Honor. The Supreme Court has said that multiple times, including in Millikin. So is there any sovereign immunity issue? Under Millikin, there is no sovereign immunity issue. You know, if the, you know, if the systemic deficiency that is the constitutional violation is under-resourcing and budgetary shortfalls, then that is the root cause of the harm to plaintiffs, then the remedy can go to that harm. Now, in Brown v. Plata, the Supreme Court, in fact, clearly, you know, articulated that. It said that when unconstitutional conditions are caused by things like chronic understaffing, what West Virginia has, budget shortfalls, a general lack of political will to enact reform, then a court can issue those types of remedies and, in fact, a comprehensive injunction with a multifaceted approach aimed at many causes will only yield the effective solution. When the State takes custody of a child, it assumes an affirmative constitutional duty for the child's safety and general well-being, as this Court recognized in Doe v. South Carolina Department of Social Services. When the State government, over the course of years, systematically fails to comply with its duty to protect these children, federal courts, when called upon, have responsibilities to step in and remedy those constitutional violations. And once invoked, the scope of federal equity power is inherently broad and flexible. The Supreme Court has said that numerous times in Swann, in Millikin, and, of course, in Brown v. Board of Education, too. Can I ask you a question that might go to sort of the first thing you said when you laid out three errors? Because I am just struggling a little bit with how exactly to conceptualize the problem from your perspective that you are identifying. Is it that the district court conflated standing with the merits, that for redressability, you're supposed to assume a favorable decision for the plaintiffs, and here the district court was assuming an unfavorable decision at the remedial stage? Or is the district court asking the right question? At standing, we ask whether the remedy was available and coming up with the wrong answer. Which of those, which way are you seeing the case? Well, Your Honors, I think that the district court erred in both those ways. You know, this Court in Buscemi v. Bell clearly said that when determining the scope of a court's remedial power, we assume that a claim has legal merit. That is what the district court was obligated to do. And so the question is whether the district court can issue any injunctive relief, you know, presuming that the constitutional violation and the violations of federal law are proven. And under binding precedent, the court can issue all of these remedies. In fact, these remedies have been issued in numerous cases, both in the child welfare context and outside of it. And as far as the concerns about the scope of the remedy, yes. I mean, he definitely conflated the standing for redressability, the special standing inquiry on redressability with end of, you know, end of case remedial concerns. So at standing, you ask, is this kind of injunction categorically available? And then the remedy question is, this particular injunction, does it satisfy the limits in cases like Jenkins? Is that, you would split the inquiry into two like that? Yes, Your Honor. And importantly for the threshold standing test, you ask whether the court can issue any type of injunctive relief. If any kind of relief is available that will mitigate any part of the plaintiff's injuries, that is enough for redressability. As this court said in Sierra Club, the removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability. Now, the Supreme Court said just this year in Diamond Alternative Energy, even one dollar is enough to show the redressability requirement. And if you look at the prayer for relief, Your Honor, because there's a lot of discussion about the holistic reforms that plaintiffs are requesting. And we concede that we're requesting some holistic reform. But there are also numerous injunctions that are simply asking the court to enjoin the defendants to comply with existing federal law, their legal obligations. And it is beyond question that the court has the power to do that under Ex Parte Young and numerous other cases. You know, and as far as the holistic reforms, you know, Brown too expressly stated that courts can remedy systematic constitutional violations in a quote, systematic and effective manner. And of course it bade the district courts on remand to do just that in fashioning comprehensive desegregation decrees. As I mentioned, in Brown v. Plata, the Supreme Court elaborated on some of the type of systemic issues that can yield the need for comprehensive injunctions. Things like chronic understaffing, chronic resourcing. You know, the same things that the district court here found in its decision on appeal. It says the foster care system has cycled through inaction, bureaucratic indifference, shocking neglect and temporary fixes for years. The court said the blame squarely lies with the West Virginia state government. And it charged the legislature, the governor and the governor's appointees for failing to do their job to protect West Virginia foster children. Now these conclusions should have galvanized the district court to step in and remedy the problem. Instead, the district court cited them to justify abdicating its responsibility. It certainly cuts against your argument to remand to a different judge, doesn't it? That the court really did seem to understand the argument and be doing diligent work to get to the bottom of the issues. But then you say because of the standing ruling that we should send it to a different judge. I was having a hard time reconciling that. Respectfully, Your Honor, I disagree that there is a conflict because although the district court said all of those things, it immediately then said that the answer for the plaintiffs is the ballot box. Now how can that be if the political branches have failed? But isn't that just that's, I mean, you say that's an erroneous legal ruling and if the three of us agree, then we can send it back and say, well, that was erroneous as a matter of law. Move on with the merits. But we do that all the time without requiring a new judge. We understand, Your Honor, that reassignment is an unusual remedy that we don't request in all cases. I think that the problem here and why we're asking for reassignment is that the district court not only grossly erred, it ignored binding precedent, but it was also very open about its long-held beliefs that not only were these remedies unconstitutional, but that they also were ineffective. You know, he espoused deep skepticism with this type of remedial relief. But let me ask you two questions in that context. Judge Goodwin's a long-time federal judge and I have some reservation about removing him because I believe that he could follow instructions if we give them. If he doesn't, then we can do something else. But to that end, in so far as establishing a record, was he within his discretion to dismiss the case sui sponte? And has he done anything else where he has abused his discretion? You might disagree with his ruling, but from a pure legal standpoint, do you have a right to do it sui sponte? And has he abused his discretion in any other manner other than you disagree with his philosophy, I guess you might say? Well, ultimately, it is this court's decision whether or not to ask for reassignment, whether or not to reassign the case. It was not within his discretion to dismiss the case. This is a de novo review and again, binding precedent dictates the outcome here. You have no choice but to reverse under binding precedent, both of the Supreme Court and this court. And again, I don't want to overstate the issue, but the district court ignored all of those authorities. It cited some law review articles, a handful of dissents, and cherry-picked some quotations taken out of context from inapposite authorities. Now, one example, for example, and I mean, I do disagree with him on this, but it is his view that these are better, these are issues that are better left to the political arena. And he cited National Federation of Ministers versus Sebelius. But this court, if we agreed with you at this point, that it's not his philosophy about it's better to do it at the battle, but he's being, he would be directed by this court to do what you're asking, or at least to consider it. Our concern, Your Honor, and I want to go to the standard for reassignment, which is, it's not in this circuit about just personal bias or animus. You know, the standard for reassignment is whether it is advisable due to the potential difficulty the judge might have in putting aside previously expressed views. You know, it is to preserve the appearance of justice. And that standard is met here based on the, you know, the statements of the district court in its own decision. You know, the statements of the district court except, you know, express deep skepticism about the remedies, you know, both their propriety and their efficacy. And he telegraphed that he would, you know, as he did in the class certification decision, which he also cited, he telegraphed that he was going to be very, you know, unwilling to grant the relief that claims his request. So is that a reason for us to reassign it? That seems to counsel against reassigning it is that you've kind of forecasted how you think this judge views the merits if we send it back on the merits, and you'd like someone who doesn't view it that way. We see that as the reason that we're requesting reassignment. You'd like a different judge who agrees with your sort of theory of the case. But if we send it back and say you were wrong on standing, you know, we're going to remove you because plaintiffs, you know, disagree with how they think you're going to come out on the merits in this bench trial, that seems to set a pretty bad precedent. You know, respectfully, Your Honor, we do not need a judge who's going to agree with us. We want an impartial tribunal. Is there any reason to question his impartiality? I have not seen one. I do not want to impugn his impartiality. And again, this is for you, Your Honors, to decide. It is absolutely within your discretion to determine whether to reassign the case. There is indication, though, you know, there's a statement that the district court made that indicates that he is in some way predetermining the merits. You know, he said this is not a case of a discreet constitutional violation that calls for a narrowly tailored remedy. How can he know that without going through a trial? So those are the types of... Well, because you're bringing these very large, amorphous class claims, do you want to talk about the class certification at all before your two minutes are up? I'm happy to, Your Honor. We see the cross-appeal as essentially a last-ditch effort to avoid accountability for the state's systemic failures. The class certification decision is evaluated under an abusive discretion and clearly erroneous standard, and the state does not even come close to satisfying that. The district court certified the class because the central legal question in this case, whether West Virginia foster children face an unreasonable risk of harm from the state's practices, was a common question that could be proven on a class-wide basis. Am I right? The general class is all children currently in foster care and all children who will ever be in foster care in West Virginia. Is that right? You know, Your Honor, I would actually have to double-check that. I know it's all children who are currently in foster care. I don't know about the future. I think it's the children who are or will be in foster care. And I just have questions about how these questions are common to all of those children. Even the certification order pointed out children who the court certified the class, but at the same time seemed to be identifying children who didn't have these common questions, like one is chronic understaffing right, high caseloads. And the court pointed out in only eight districts in West Virginia are the caseloads within, you know, acceptable levels. So my question, obviously, is then will the children in those eight districts, it's not a common question for them, right, whether understaffing is creating this risk of harm. Is it? Well, I mean, for one thing, there are other problems. Is that a common question for those children? Absolutely, Your Honor. How? The reason for that, well, first of all, if two-thirds of the districts are understaffed, that creates a huge pressure on the system. And in fact, in West Virginia, you know, caseworkers get reassigned. They get taken from one place to another. They also routinely quit. There has been high turnover. And so you never know whether you're going to have enough caseworkers. And as a general rule, there aren't enough. You know, these cases that we're supposed to be asking, there's supposed to be a question that's common to every member of the class, right, that this question, and we will get a common answer that will resolve something important with respect to each class member, not just, well, it's a big problem that affects a lot of members, but it has to be each member. So how does the understaffing common question answer and give us an important answer for children in districts that aren't understaffed? The common question analysis, Your Honor, focuses on the claim and poor injury that is being asserted, which is a... But those children are not injured, right, if they are not subjected to the understaffing? They, I mean, we disagree, Your Honor. They are absolutely injured. There's a holistic deficiency in the system.  Because, well, and let me also tell you, you know, say that it's not just understaffing, right? There are other... Right, but the court identified three common questions for the general class, and one of them is understaffing. Correct. So we have to, well, we just have to deal with what we have. That's one of them. How is that common to children who are in districts that aren't understaffed? Well, because the core legal injury is risk of harm. Yeah, are those children at risk from understaffing if their district is not understaffed? Absolutely, because that district may be understaffed at any imminent moment in the future, as many of them are. Just because, and this is a hypothetical, because most of the time I think most of the districts are understaffed, but just because one district happens to have enough staff in that moment doesn't mean that a month later two will have quit. Now, one will go on medical leave, and that they will be understaffed. That is how risk of harm works, and... That seems to suggest maybe the class should be defined as children in districts that are currently or will be understaffed, right? I mean, the same problem comes up with the case planning. The court identified statistics and said, you know, only 19% of families say that they were actively involved in the case planning, and so then the question obviously arises, well, as to that 19% of families and children, how is the failure to involve families in case planning a common question for them? Because those failures are repetitive, and they may happen at any time in the child's time in foster care. But that's like asking us to imagine something that we'd have no evidence of. Well, a common question doesn't necessitate a common answer, right? It does. That's exactly what Walmart was about, that it's not just common questions. It's that a common answer will move the case along for each member of the class. The common answer is whether, as a whole, these things can be litigated and brought to, yes, ultimately a common answer. I think one of the, maybe what, Your Honor, you might be having difficulty with is the distinction between the risk of harm and, you know, the actual manifest harms, the cascading negative impacts in each child's life. Well, if we were to agree with you and send it back, we don't have to reach that question now, do we? Your Honor, nobody is, I don't think the state is asking for a remand on class certification. I think the court can decide, you know, to, of its own accord, it can answer this question. I mean, again, Can I ask you a question? I have questions about whether we should be reaching the class certification question at all. There was no 23F certification in this case. I don't really understand how you can take a cross-appeal from class certification. You can only appeal a judgment, and class certification is not a judgment. That's the whole reason we have 23F. So I'm actually a little perplexed as to why we would reach that issue in this context, and I'm wondering if you have thoughts about that. We were a little perplexed as well, why there was this conditional cross-appeal. We analyzed whether we could move to strike it. My understanding is that because Did you move to strike it? No, we did not, Your Honor. Is it jurisdictional, or is it waivable by the opposing party? I don't, I'm not sure, Your Honor. I think the reason why we didn't move to strike is because it's our understanding that in a final judgment, everything is contained within that final judgment, and theoretically you could, I mean, they could have a second bite at the apple, and Yeah, but if we have to reach standing first, and if this Court agrees with this is a conditional cross-appeal, it kind of only springs into being if we first agree that there was standing, the district court erred, and this case is going forward. At that point, this would be an interlocutory review of a class certification decision, right? I think that's correct, Your Honor, and that doesn't seem proper to me, to your question. I just want to say one more thing about What would be gained by sending it back for a trial on these classes, and then having another appeal where you give us these same briefs and these same arguments about class certification? Isn't it, what's the efficiency gain there if we don't decide it now and wait to decide it later? I don't, I don't think that there is an efficiency gain if you assume that the class certification was wrongly decided, or that it might be. We strongly maintain that class certification was well within the bounds of the abuse of discretion standard. First, it's not about whether this Court would have come to its own conclusion that might be different. It's about whether the findings were clearly erroneous, and whether there was an abuse of discretion. And it should, you know, it's worth mentioning that every court that has addressed a foster care class action across the country has certified the class. Now, the District Court relied on numerous precedents, and the reason is because these children are in the custody of the State, and these system-wide practices don't just impact, you know, a discrete part of the State. They are system-wide. What is the practice, like when it comes to having an insufficient number of foster homes? What is the State practice that has caused that? What is the practice you're challenging? Yeah, well, one of the common questions was an insufficient array and number of foster homes. I mean, there are a number of practices that are bound up in that. You know, the State doesn't do enough to recruit foster families. It doesn't... So the Court seemed, the Court identified the array as the practice, the sort of state of affairs, there's an insufficient number. But I didn't see the Court identifying a common practice that you were challenging that led to that state of affairs. Well, the practice, it was, I think, array and number and type. And so the practice is having a chronic deficiency in the number of available placements for children, which causes them to stuff children into any placement that they can possibly find, many of which are inappropriate. And we interpret the array question in that certified question to be all of the inappropriate places where these children are placed. Things like offices, you know, without even proper beds. Well, the State says that they had evidence to present that this is not a practice, that this is something they're trying to solve and fix. It's not, you know, in any way something that they are, that they have intended or that is the policy of West Virginia DHS, but that the District Court wouldn't consider that evidence because it went to the merits. We think the District Court was correct in saying that it went to the merits. There was substantial evidence that there is a drastic shortage of foster care placements and that children are in inappropriate placements where they are not safe and where their needs aren't being met. So that evidence is there. What the State is doing about it, you could call remedial efforts. And remedial efforts, if anything, are a question of mootness, right? They don't moot the claim unless. Well, I mean, saying that there's evidence that there's not enough placements is like saying, you know, there's evidence that something is going wrong. But to say there's some common practice that's affecting everyone, you have to identify the practice, the pattern, the policy, the thing behind it that is the same for everyone and is affecting everyone in a certain way. And that seems to be tough to identify here. I think we're getting into the minute particulars that would be litigated at trial. You know, when we talk about the deficiency in foster homes, you know, the shortage, I mean, what goes into that that the State is not doing or is doing are things like they're not paying foster families enough. They're not providing enough support and services for people to want to be a foster placement. They are, there is, you know, there's, they don't support foster, they don't, you know, they don't provide enough services to foster parents. I mean, there are innumerable things that they are not doing that they should be doing. They are essentially chronically under budgeting, under resourcing, under staffing the system such that their practices, you know, their omissions contribute to these deficiencies across the system. All right, thanks so much for your time and you've still got some time on rebuttal. Thank you very much, Your Honors. Mr. Williams, we'll hear from you. Good morning, Your Honors. May it please the Court, Michael Williams for the State Defendants. Two days ago, this Court reiterated that a plaintiff does not have standing when his or her requested relief would, quote, have the Federal Court act beyond its proper role in a system of separated powers and dual sovereignty with the States. In dismissing plaintiff's suit for lack of standing here, the District Court merely recognized and respected that unobjectionable principle. In particular, it found that the sweeping relief that plaintiffs seek would require the District Court to effectively take control of the operations of a State Executive Department. And perhaps worse still, plaintiffs had not shown that this takeover would actually remedy the injuries that plaintiffs purport to identify. Well, that case, unless I'm missing something, was about the State suing the Federal Government over restoring Federal employees. I mean, that makes no sense at all. What's that got to do with this case? I mean, you're talking about the State defending or representing Federal employees suing the Federal Government. I agree with you. I guess it was Judge Wilkins that wrote that. But I don't see the analogy between that case and this case. So your Honor's correct that the ultimate holding concerned a suit against the Federal Government by the State of Maryland. What I will say is that in reaching that holding, the Court identified several instances in which a particular injury may not be redressable. And one of those instances was when a Federal Court is asked to do what plaintiffs are asking the District Court to do here, which is reach into the affairs of a particular State Executive Department. No, no, no. Maybe I'm misunderstanding. What that suit is engaged in is diving into the affairs of the Federal Government. It's the reverse. That's correct as to the holding, Your Honor. But in the course of reaching that holding, Judge Wilkinson laid out several instances in which a Federal Court may determine that an injury is, in fact, unredressable. And in that list of instances, one of the things that Judge Wilkinson identified is exactly what the District Court identified here. I certainly wouldn't want to criticize Judge Wilkinson, but some of that opinion goes beyond what the issue was in that case. Well, that's fair, Your Honor. But I think it still is a reflection of well-established law. So if that's a concern that you think it was beyond the holding, what I would point you to, for instance, the Shepard v. Morrissey decision, which does specifically concern the effort of a court to reach into the affairs of a State Executive Department. Well, do you disagree that there is a sense of post-Milligan that there are, that Federal Courts have exercised with approval of the Supreme Court intervention where a persistent constitutional violation has occurred, such as in prisons or in schools? Do you agree that that's happened? The State recognizes that that has happened. However, there are still limits on the ability of the Federal Courts to exercise that power. And I think the desegregation cases recognize that. The prison context recognizes that. And I think, ultimately, the District Court simply recognized those limits and applied them to the context here. And I don't disagree with you. I mean, there are limits to what we ought to be able to do. I don't disagree. But to get in the door, you would have to agree that Federal Courts have that right. The State does not quibble with the notion that a plaintiff may bring a Federal constitutional claim. I think there's space between the plaintiff's conception of the standing inquiry and the State defendant's conception of the standing inquiry, is they seem to perceive the remedies question as solely confined to the end of the case. Well, this kind of goes to the question Judge Harris asked earlier, I think, is, I mean, this question for standing and redressability is just, can the Court grant any effectual relief? Correct. Do you agree with that? We do. So the question is not, can the Court, does the Court have the power to grant plaintiffs swing for the fence as remedy? That's not the question at standing, right? Well, I would say that it is a question of the, what I'll take your words as the swing for the fence as remedy, when that is the sole remedy which they pursue. And what I would say is... Why is that true? I feel like District Courts always, even if, imagine hypothetically, the plaintiffs are asking for nothing but swing for the fences, District Courts narrow those at the remedial phase of the case. I don't, I don't understand how we absorb that inquiry. Is this particular injunction tailored properly under Jenkins? I mean, that's what the Courts are for. The District Court will apply Jenkins and all those other cases at the end of this and tailor the injunction accordingly. So there is a scope of remedy issue at the end of the case. We don't quibble with that either. But what we would say is that you have to look to the nature of the claims that are being brought and then accordingly measure the remedy that they perceive to actually redress that. Let's look at the violation and tailor the injunction to the violation. I thought that was really important. You don't tailor it to the claims that are being brought. You tailor it to the claims after there's been a trial and some violations have been proven. That's why I don't understand how you can do the tailoring before the trial. And so perhaps I'm just being useless with my language and I apologize for that. I think what you have to tailor it to is the constitutional asserted injury and harm. The Courts, the remedy is really meant to mirror the injury to the remedy. That's been proven at trial. Well, no, Your Honor. Diamond Alternative, one of their preferred authorities, specifically talks about even at the pleading stage that the remedy that they seek needs to mirror the scope of relief that they're asking for. And I think if you look at the claims, and in fact this Court characterized some of those claims before in Jonathan R. 1. I mean you must, sorry, this is a little semantic point. I assume if the plaintiffs have made a claim and you prevail at trial that it is not true, you will not then tell the District Court you should tailor the injunction to the claim and not the verdict. Your Honor, and maybe this is I think where we're two shifts passing in the night. I think the way we perceive it, and we're basically taking plaintiffs at their word. I'm looking at J247, for instance, when they're actually characterizing what they want and what they're asking for and what they perceive their claim to be. They perceive their claim to be a unified singular intermingled violation to the extent, and actually you heard some of that same language this morning, to the extent that they're characterizing it as comprehensive. I think she characterized it as a holistic injury. These things all operate together in their mind. So if they can't, for instance, parse out 30 individual remedial orders because that wouldn't actually address how they at least have pled and asserted this particular claim and this particular harm. And again, this Court itself characterized their assertions as, quote, wide-reaching, intertwined, and systemic failures. Is this from our first opinion? From your first opinion at 336. And then we said, if I'm remembering right, and it's premature to consider the scope of the remedy that's being sought at this threshold time, and that will be a question at the remedial phase. I mean, we said that. You absolutely said that, Your Honor, in the context of abstention. We do not quibble with that at all either. But what the Court didn't say is that you have to strip out any concern about remedy at all until they actually get to trial because, frankly, I think that would create serious jurisdictional concerns. The District Court would then be in a position where it's essentially issuing an advisory opinion because it doesn't know if it's ultimately going to be able to actually offer any relief to the plaintiffs before it. If it really can't offer anything, then a finding on liability gets them nowhere other than an advisory opinion, which is, of course, exactly what the District Court can't offer them. So in other words, by seeking these claims that are wide-reaching, intertwined, systemic, their remedy is concomitantly wide-reaching, systemic, and broad. And trying to peel out individual elements of relief just doesn't work and isn't consistent with what plaintiffs themselves have actually asserted. So I think the District Court correctly recognized that remedies of that sort are a serious concern because they require expansive judicial administration of executive functions. They have to be more than a serious concern for this to work at redressability. They have to be per se, you can't do it. And Your Honor, again, is keeping me to my precise language. It is per se improper. What's the best case where it is per se impermissible for a District Court to issue, I'm going to try to quote, but I'll get it wrong, like wide-ranging systemic relief? I want to be frank with Your Honor that there's not one single case. But I think the concepts that you have to follow from cases like Missouri v. Jenkins, Horn v. Flores, these cases all provide principles that the District Court appropriately applied here, where it found the three distinct problems of intervention into the inner workings of an executive function, the usurpation of core state functions, not just the control of the purse, which Judge Floyd has already mentioned, but actually control of the purse in a context of child welfare. But in addition, making express public policy determinations and taking options off the table to address what are admittedly serious societal and social problems in West Virginia. And that confluence of circumstances is what left the District Court concluding it had no authority to order the relief that plaintiffs sought. But that's not the question. It has to have no authority to do any relief. And I totally disagree, sorry, I totally agree with you. The District Court didn't say that. The District Court said I can't issue this injunction. Any relief necessarily has to be tied to the plaintiff's claims. And again, I would say a District Court, for instance, can't say, boy, I'm really concerned by the child welfare problem in West Virginia. And I think a good step towards the right direction personally would be if I order the department to implement some new specific policy that I think is going to be great and is going to really help children. That's not what they brought to the court. The court can only respond to the claims that are brought before it. And ultimately, that's what the District Court did. So given that, I think... Well, one of the examples she gave, I don't know whether this is right or not, but she said that one of the things they were trying to, relief they were trying to get was to have West Virginia comply with federal law in that area. And I don't know what she's talking about. Let's assume you're not complying with some federal statute with regard to children. Could she not obtain relief for that? Again, it would depend on what they're asking for. Because a follow-the-law injunction, courts are extremely skeptical of. Well, isn't that why we have a jury, I mean, have a trial? Well, no, Your Honor, because again, I feel like I'm just circling the same point. I apologize for that. But I think if there's no remedy at all, then that becomes a problem of addressability. If the court says, I think there's something I can do for you, but I'm not sure what it is yet, that becomes the sort of scope of remedy problem that I think is appropriately addressed at the time of trial. I completely agree with that idea. But if the court looks at the claims before it, and what they say is required to remediate and redress and produce a likely resolution, which is the standard for addressability of the claimed injury, if they look at that and say, there is nothing that I think will meet that level, then yes, I think the court does have a threshold responsibility to say, I can't do that for you. Can I ask you a question? Wouldn't it have been both more customary and more productive if the district court had given the plaintiff some notice about what it was thinking about here and maybe had a hearing or gotten briefing? It seemed very unusual to me. Just given, this is brought to mind by the conversation we are having, this seems like it would have been useful to involve the parties and particularly the plaintiffs if this is where the district court was headed. Do you have views on that? I think the state defendants would concede that this is not customary. What I would say is that the particular special context of this case provides less reason for concern. This was, of course, a case that had been, Your Honor is familiar with this case. It's a case that's been winding its way through for several years now. There's been several submissions that go to these exact questions. The district court had flagged its concern with the problem first. Yeah, but it flagged it and said, and that's something I'll get to later. I mean, I feel if anything, it's sort of put the plaintiffs on the opposite of notice. It said, I've got issues, but we'll deal with that down the road. I feel like it's kind of bait and switch to then all of a sudden say, never mind, I'm actually going to do it as a dismissal. So I guess if the court had just kind of popped up out of nowhere and said, by the way, I'm dismissing on standing, that might be one thing. But I think it's important to remember the context of the pending summary judgment motion. And in that pending summary judgment motion, state defendants had, not to use the dangerous word, but flagged, identified some of these issues with redressability. And I think at that point, that's what motions do. They serve to put the party on notice that they need to be aware of a problem that they need to identify and address before the court. And so having failed to do that, I think the district court appropriately said, well, they've now mounted their whole summary judgment record. They now know the issue. They know from before it was an issue for me. They know now it's an issue for the state defendants. So I'm ready to move forward. And I think in that context, I think there isn't at least reversible error there in choosing to sue a sponte as a course. I think as Judge Floyd mentioned, a district court does have a right to sue a sponte address standing. So I will just briefly comment. I see the yellow light is on, but I'll briefly comment on a lack of injury in fact as well. We recognize, of course, that this is not an issue that was addressed by the district court, but it is a jurisdictional issue that the court has a responsibility to address on its own, even if the district court did not. And some of the discussion I think that we've been having today also goes to that same injury in fact problem, that plaintiffs have oftentimes focused on sort of a risk of a risk of a kind of ambiguously defined harm that's in some way tied to a due process or an ADA claim. And respectfully, that's just not enough. There needs to be a certainly impending identifiably concrete injury. And as much as the state of West Virginia and the state defendants recognize that there are serious problems in the system, to say that there are serious problems in the system is not to say that there are constitutionally cognizable injuries that actually sustain a complaint here. So that's all we note on that issue. We think it's in some ways tied in with redressability. Again, they are in some ways mirrors of one another. But that's ultimately a problem as well. Can I ask you this question about your class? Can we review your appeal for class certification given that it's outside the procedures prescribed by Rule 23F? So we recognize this is something of an open question, Your Honor. This court, I believe, has one case in which a party did what we did here, where they conditionally cross appealed. And the court sort of in its discretion said, we choose not to address it. We're going to send it back. It didn't suggest there was some sort of jurisdictional problem. It didn't suggest that the rule barred it. We are aware of authority in other circuits. I believe the Seventh Circuit in particular actually counsels parties to do what we did here, which is if you're bringing, if you're on appeal and you have a problem with class certification, raise your hand now and speak up, perhaps because of some of the efficiency concerns that Judge Rushing was identifying. So how hot an issue is that with you? How hot an issue? It's very hot, Your Honor. I would say that if the court allows this case to proceed, it absolutely should remand. But I guess, sorry, remand on the class certification? Yeah, sorry if I misheard you. But if the court does allow the case to proceed and put aside the standing issues, then we would ask that you remand with instructions to decertify the class. I mean, a class certification, that can be changed any time, right? I mean, I think one of the efficiency reasons behind 23F is why should we pass on it when the district court could still change it? I mean, maybe some of these remedial concerns that the district court has flagged will make it think that it also should narrow the class. So I think here, Your Honor, it would be especially appropriate to go ahead and address the issue because of the serious problem with commonality. That's an issue that doesn't necessarily, I mean, I suppose a lack of a common issue will, of course, create problems when it comes to the remedy for the class as well. But it's not sort of tied up or necessarily nested into those remedial issues that the court will be addressing on the standing side. And we, as we explained, Walmart, we think, very clearly requires an actual common policy or practice that drives a common answer. And searching through this record, we simply can't find one. We instead see our series of allegedly disparate failures and, if anything, a series of uncommon practices, policies, and even disparate effects. And this court has been very careful to say that, especially post-Walmart, that's simply not enough. And I think some of the colloquy that you heard, for instance, on caseloads is one of the reasons why we think that's so. Different members of the class are being affected by these supposedly different common policies in different ways. And that alone is enough to say that it's not actually a common policy that satisfies the commonality element of 23d2. I think there are other aspects of what the district court... Can I just ask, I'm sorry, just about the procedural posture again. Was there, given all of that, is there a reason you did not pursue 23F review of the class certification decision? Here, Your Honor? Mm-hmm. So, we did not earlier pursue 23F. Right. Yes, that's what I meant. At the time of the certification. Understood. Candidly, Your Honor, I don't know.  Yeah. But what I can say now is that, at least with our view of the present record, we think that there are glaring abuses of discretion based both on sort of a legal misconception about what the nature of a common policy or practice is, as well as the court's responsibility in conducting the rigorous analysis. We think the district court was inappropriately afraid, I think, to engage with issues that might have touched on the merits because he misunderstood and thought that those were sort of verboten, when Comcast and other cases make it clear that they are not. And he inappropriately engaged with some of the evidence and, in particular, didn't take note of evidence that showed that these policies continued to evolve and continued to work in sort of inconsistent ways that undermine a finding of commonality. Can I ask one more procedural question?  Judge Harris's good points have made me wonder, would we need to go through our sort of typical 23F analysis before deciding to decide your cross-appeal? You know, the rule doesn't have requirements, but in the case law, you know, we kind of, we go through, consider a few factors. Would we need to do that now, or is that, is there no need for that because we have a final judgment of some sort? Well, three things, Your Honor. I would say, one, no court that I'm aware of has undertaken that kind of analysis in this sort of unusual posture. Two, I think that what plaintiffs suggested as to the sort of every prior order being sucked into that final judgment does to some extent hold here. And three, I think it is relevant that I haven't heard any suggestion that that standard is applicable or necessary to be met by plaintiffs. So I think it's not a jurisdictional rule, as far as I'm aware, so that could, of course, be waived by plaintiffs and we believe has been waived by plaintiffs. This is such a tricky issue, I think, because, I mean, it is jurisdictional that had you not gone through 23F and just noted an appeal from the class certification at the time. Right. Of the certification, we would not have had jurisdiction to consider that appeal, right? It's a, that's Cooper's and Libran's, right? There's no, right, there's no, correct. Right. So, I mean, there seems at least quasi-jurisdictional. There's some, there's a jurisdictional thread in here somewhere. I confess, I am actually very confused by this question. Right, jurisdictional characteristics or jurisdictional flavor sometimes, but I would still say that I... That at this point, because there was a final judgment, we're out of jurisdiction. That opens the door into the appellate court, I would say. Is there an answer to this question that keeps confounding me? When you take an appeal, it's supposed to be from a judgment, but you're appealing a class action, your cross appeal is of the class action certification order. That's not a judgment, so how can you take an appeal from it? It is, Your Honor. I would say that the way the rule conceives it is that we can sort of target the underlying order by way of the judgment, and I think that's why we do term it a conditional cross appeal. It does sort of spring back into life in that sense. But it does, when it springs back, it's now interlocutory. And I think there has not been a court that has said that. The Ninth Circuit pretty much did, but it was a long time ago. Yeah, maybe I missed the memory. Post 23F, so it may not be there. I was going to say, I think post, more recently, I think the Ninth Circuit is one of the circuits that does tend to hear these now, unless I'm mistaken. Okay. Yeah. Tricky. I recognize it is a tricky issue. However, I think particularly given plaintiffs not raising many of these issues, I think the court would be well positioned to address these important questions, especially because, I guess I'll just, I see the red light is on, so I'll just briefly end by saying it does go to some degree to the ultimate complexity of the final injury and remedy and all that, based on what class we're looking at. I mean, that's going to shape those decisions if the court finds that there is some issue with the district court standing analysis. So thank you. Thank you. Hello again, Your Honors. I want to just address a few of the points that counsel made, you know, in their 28J letters, right? And you were having some discussion about that, the Maryland versus USDA opinion and the Shepard opinion. They're all examples of the, you know, simple redressability question that the Supreme Court stated in Diamond Alternative Energy. You know, what are the primary goals of redressability? Is to ensure that the plaintiffs do not sue the wrong parties and that the courts don't issue advisory opinions. So in Maryland, we had the wrong plaintiffs. In Shepard, they were the wrong defendants. What you need is a sufficient nexus between the relief requested and the plaintiff's injury. And we clearly have that. It's comparable to what this court held was sufficient for redressability in Shenandoah Valley Juvenile Center, where it said that, you know, the harm was the constitutionally inadequate system of care that was affecting the plaintiffs who were juvenile detainees in a detention center. And the relief requested was addressed at that harm because they were seeking a trauma-informed standard of care. That is enough. And what is also enough is that we're entitled to any kind of injunctive relief. There's all this talk about the scope. We are in so many of the specific components of the prior relief, we're asking for compliance with existing legal obligations under the Adoption Assistance and Child Welfare Act. Now, under West Virginia state law- I didn't think you had a federal statutory claim anymore. District Court reduced it to the Substantive Due Process and the ADA and Rehab Act claims, right? Not the one you just mentioned? Well, that is correct, Your Honor. We do have an ADA claim. Right. Sorry. Those federal statutes, you have an ADA and Rehab Act. We don't have an ACWA claim. I think what my point more largely is that the types of legal violations are indicative of a constitutionally inadequate system of care. So whether or not we have an existing ACWA claim, these are all deficiencies in the system that are related to the chronic under-resourcing of the system. I want to turn briefly to the class cert issue because one thing is setting aside the fact that it seems like you may not even want to reach that question for procedural issues. If you do, you were asking a lot of questions about how do you parse the injury. And I think it's important to remember that the risk of harm is inseparable. It's unitary. And in Brown v. Plata, I see my time is up. May I just quickly conclude? Thank you. Brown v. Plata is an example of a class certification of the entire California prison system. And one of the issues was chronic understaffing, which the Supreme Court said was one of the causes of harm. And the court did not ask... I don't think the Supreme Court reviewed the class cert, did they? They reviewed the remedy? I think, yeah. Ordered release of thousands of California prisoners? That's correct, Your Honor. The class was already certified. But throughout the class certification process, and to my knowledge in the class cert decisions that we've briefed and that our opposing counsel has briefed, no court has ever asked whether one particular district is sufficiently staffed where others aren't, where two-thirds aren't. In one... It's kind of like Walmart, right? Where there's, you know, you can say, well, you know, Walmart baked into its promotion policies discretion, right? And this discretion is exposing all women to a risk that their manager won't promote them because of discrimination, right? But the court said that sort of thing is not enough. It has to be... The policy itself is actually affecting each woman, right? There's a common question to every member of the class. And if you define it at a high enough level of abstraction, you know, everyone works for this company, so it might happen to them. That's not enough. You know, respectfully, Your Honor, I don't think we have a Walmart problem. The Walmart case is distinguishable. You know, there were Title VII claims there. And the plaintiff's theory of the case was that managers exercise discretion and that there was no official policy that they should be... That their discretion should be cabined. That is the opposite of what we have here. We have... Our theory of the case is that there are, you know, mandated standards that the state is not complying with as a whole. You know, the caseworkers are not visiting children even once a month as they're required to do by state law. And that those deficiencies, those failings are all caused by systemic problems. Not just chronic understaffing, but also inadequate case planning as a whole. Also an insufficient, you know, infrastructure for community-based services that are forcing children into institutions. So I see my time is up. I hope I've answered your questions. Thank you. I think I'm limited on certs or rebuttal to class certification, so I'll limit myself to just two things on that score. One, I think the last thing that you just heard is very important for class certification purposes, which is that I think plaintiffs are confusing common injuries, common problems, common issues, with a common practice or policy. And it's the common practice or policy that then drives the common answer. And that's what you have to find for purposes of commonality. That's what Wal-Mart said. I think it really is a Wal-Mart problem in that all of the women, for instance, who were suing in Wal-Mart might have felt similar harms and that they were treated unfairly in the employment context because of their gender. But ultimately what the court said was that there just wasn't any evidence that would suffice for a rigorous analysis to show that Wal-Mart was doing something that applied across the entire class that specifically caused those injuries. That to me is the fatal flaw. Can I ask you just a quick question? I think I understand your Wal-Mart argument. Just looking at the case law out there, it is the case that many very similar-looking class actions in the foster care context have been certified and approved on appeal. Would you say those cases were different, that those cases didn't have the same Wal-Mart problem, or just that they are wrong, which is entirely a legitimate argument? I think that there are distinctions factually between those cases and this one. I think the way that we've heard plaintiffs frame this up, for instance, as one big holistic endeavor that's a huge singular universal remedy, I think is maybe different than, for instance, a class action where I believe there were 60 distinct remedial orders and they really kind of approached it more like a rifle shot kind of approach for each particular injury. To the extent that there is a case out there, I'm not aware of it that's on completely all fours. None of them will be identical, but they all seem to raise the same kind of Wal-Mart issue. In every case, it's not like the policy says, let's understaff, it's just, yeah. I think maybe there is one piece of evidence that the district court at least didn't identify, and I haven't heard plaintiffs identify that some of those other cases do purport to identify, which is sort of a specific and deliberate intent or policy not to have a policy. We as a department make a choice specifically just to be indifferent to this issue. That is a much different question than I think the issue that we are being presented with here, which is there are common harms, but they result because of resource limitations, or they result from professional limitations, or I'm of course taking their allegations as true. But they result from all these sort of disparate causes, and I think that Wal-Mart really raises the question of whether that's a sufficient common policy or practice. So I see my red light is on, so I'll let it go. Thank you. Well, thank you very much. Although we usually come down to Greek Council, we're going to ask to shake things up and do it differently. If you guys wouldn't mind coming up here, we would like to shake your hands from the bench.
judges: Pamela A. Harris, Allison J. Rushing, Henry F. Floyd